

**U.S. Department of Justice**

Criminal Division

MDR:RT:JMO:PLP:pp
*Office of International Affairs*                                           *Washington, D.C. 20530*

TO:        The Central Authority of the Republic of South Africa

SUBJECT:   Request for Assistance in the Criminal Investigation of Christiaan Arnoldus Neveling and Usama Darwich Hamade

FILE NO:   182-50594

DATE:      October 5, 2015

    The Central Authority of the United States of America requests the assistance of the Central Authority of the Republic of South Africa to obtain evidence, for use in a criminal investigation or any criminal proceeding, pursuant to the Treaty between the Government of the United States of America and the Government of the Republic of South Africa on Mutual Legal Assistance in Criminal Matters, signed at Washington on September 16, 1999 (the Treaty).

    The United States Attorney's Office for the District of Minnesota (prosecutor), the Federal Bureau of Investigation (FBI), the United States Department of Homeland Security Investigation (HSI) and the United States Department of Commerce (DOC) are investigating whether Christiaan Arnoldus Neveling (Neveling) and Usama Darwich Hamade (Hamade) violated U.S. criminal laws by illegally obtaining technology manufactured in the United States for use in Unmanned Aerial Vehicles (UAVs), also known as "drones," for military purposes in Lebanon. The export of such technology without a license violates the export control laws of the United States. The prosecutor needs bank records; court documents, including charging documents, convictions and prison release dates; entry and exit records; identity documents; shipping records; military service records; incorporation records; and telephone toll and subscriber records. These records are needed for use at trial to establish the participation of Neveling and Hamade in the criminal activity.

### Confidentiality

    The details of this investigation are considered sensitive. Therefore, in accordance with Article 5.5 of the Treaty, please treat this document, its contents, and the fact that this request has been made as confidential and do not disclose it publicly or share it with the subjects of the investigation. Also, please instruct all those who must be made aware of this request for assistance for purposes of its execution that the request, its contents and subject matter are to be kept confidential and should not be shared with the subjects of the investigation nor disclosed publicly.

### The Facts

> Defendant's Exhibit 1
> US v Hamade, CR
> 15-237(1) (JRT/BRT)

    In September 2011, the FBI, HSI, and the DOC commenced an investigation into the illegal procurement by South African citizens, Neveling and Hamade, of military and dual function technology and equipment that was manufactured in the United States and elsewhere.

The investigation has revealed that as early as July 2009, Hamade began communicating with Neveling about acquiring United States goods. Hamade is believed to be affiliated with Hezbollah, a terrorist group based in Lebanon. At the direction of Hamade, Neveling began contacting U.S. companies in August 2009.

In October 2009, Neveling purchased a Microturbo TRS18 turbojet engine (the "Jet Engine") from an Indiana company called Avon Aero Supply (Avon). Documents obtained from Avon indicate that Neveling directed that the Jet Engine be delivered to SAB Aerospace (SAB) in Dubai, United Arab Emirates (UAE).

In October 2009, Neveling also purchased 10 Honeywell Digital Compass Solution HMR3000 compasses (the Honeywell Compasses) and a Demonstration Module for the Honeywell Compasses (the Honeywell Demonstration Module). Records obtained from Honeywell show that, pursuant to directions by Neveling, the Honeywell Compasses and the Honeywell Demonstration Module were shipped to Execshelf 3029, a South African company owned by Neveling.

Between October 2009 and May 2010, Neveling purchased two GPS-INS, Model C-MIGITS III, P/N CMIG-310 Inertial Measurement Units (the "C-MIGITS 310 IMUs") and a test kit (the "C-MIGITS Test Kit") from Systron Donner Inertial (SDI), a company located in Walnut Creek, California. Neveling also purchased 11 Model MMQG IMU's (the "MMQG IMUs") from SDI, and another test kit (the "MMQG Test Kit"), during the same period. SDI records indicated that Neveling directed that all 13 IMUs and both test kits be delivered to Neveling and/or Execshelf 3029 in South Africa.

In January 2011, Neveling purchased four Microbat 275 cameras from Bental Industries, a company located in Golan Heights, Israel. An invoice located in Neveling's South African home, pursuant to a search warrant executed by South African authorities and provided to HSI, indicates that Neveling had the Israeli cameras shipped to Neveling and/or Execshelf 3029.

The Jet Engine, the Honeywell items, and the MMQG items are regulated by the DOC's, Export Administration Regulations (EAR) and are deemed "dual use" items. A "dual use" item is an item that can be put both to civilian end-uses and to military end-uses. Under the EAR, certain items are controlled for export to certain countries and require a license from the DOC's Bureau of Industry and Security (BIS). For the EAR items in this case, an export license is not needed for transmission to South Africa or to the UAE, but one is needed for shipment to Lebanon. The C-MIGIT items, however, are military use items regulated by the U.S. Department of State, International Traffic in Arms Regulations (ITAR). An export license is required for the export of any military use items from the U.S. to another country.

When a controlled item, under either the EAR or ITAR, is exported from the United States, the exporter is required to describe the end user of the item, and the end use to which the item will be put. An "end use check," also known as a "post-shipment verification," is sometimes conducted to determine whether the exported item was put to its represented end use.

2

Neveling, through his company, Execshelf 3029 CC, ordered and paid for the above-referenced items and, except for the Jet Engine, took possession of the items upon arrival in South Africa. Neveling represented to the manufacturers that the items were to be used in UAVs with observation capabilities only. The UAVs purportedly were to be flown over wildlife preservations in South Africa for the purposes of monitoring wildlife migration and identifying poachers. Neveling also noted in U.S. export control documents that the technology would be put to use in South Africa. Neveling also obtained an export license for the C-MIGIT items.

In 2011 and 2015, representatives of the United States Department of State (DOS) and DOC conducted end-use checks in South Africa in order to locate the technology and equipment exported from the United States. They were unable to locate the technology or equipment in South Africa.

After taking possession of the items, Neveling provided the items to Hamade, who was doing business as Deltashelf 03 CC, a South African corporation. Hamade was not listed as an end-user. Thereafter, Hamade, individually or acting through Deltashelf 03 CC, transferred the items to others located in Lebanon, including his brother, Issam Hamade. The investigation has also revealed that Hamade is closely affiliated with a group of people in Lebanon who were interested in obtaining UAV technology with attack capabilities. According to DOC and DOS records checks, neither Hamade nor Neveling obtained a license to export to Lebanon the Jet Engine, the Honeywell items, the MMQG items or the C-MIGIT items.

Neveling and Hamade, along with their spouses, Gaynor Anne Neveling and Hanah Mary Hamadi, traveled together to Lebanon during August 2010 to meet their contacts there. Hamade is believed to have traveled to Lebanon from South Africa on other occasions to meet his contacts. In addition, Madelein Espach O'callaghan, an associate of Hamade who worked with Hamade at Deltashelf 03 CC from time to time, travelled to Lebanon at Hamade's direction on one or two prior occasions during the period spanning 2008 through 2012 (the exact dates of the two trips being unknown) to deliver apparently unrelated contraband to persons in Lebanon. Hamade and Neveling continued to communicate with each other until August 2011, when Neveling stopped doing business with Hamade. Hamade used telephone and/or cell phone numbers 27823364098 and 277212564216 and Neveling used phone number 27832801848.

In 2014, U.S. investigators obtained copies of bank statements and credit card receipts pertinent to the investigation. A review of those documents, along with documents obtained from other sources, revealed that Hamade, through Deltashelf 03 CC, funded purchases made by Neveling of the U.S. produced items, as well as Neveling's procurement of four Microbat cameras produced by the Israeli company, Bental Industries. Those records included the following:

1) Mastercard 5221-1820-3586-2570, issued by the Standard Bank of South Africa and associated with Deltashelf 03 CC, which Hamade provided to Neveling to make a payment to UPS for the shipment of four Microbat 275 cameras obtained from the Israeli company Bental Industries, on January 11, 2011.

2) Mastercard 5412-8200-1564-4596, issued by Nedbank Ltd. and associated with 8 Mile Investments operated by Neveling, Ltd, which Neveling used between approximately September 2009 and August 2010, to make payments to Systron Donner Inertial (SDI) for items obtained from SDI.

3) Mastercard 5412-8200-0885-0275, issued by Nedbank Limited and associated with Neveling, which Neveling used between approximately September 2009 and August 2010, to make payments to SDI for items obtained from SDI.

4) Visa 4923-0500-006-6838, issued by Nedbank Limited, which Neveling used between approximately September 2009 and August 2010, to make payments to SDI for items obtained from SDI.

5) ABSA Bank account in the name Deltashelf or Deltashelf 03 (account number unknown), possibly in the names Usama Hamade and/or Issam Hamade and/or Madelein O'callaghan: money from this account was transferred by one of the three named individuals to Neveling's bank account (see #6 below). Neveling then used the funds to pay for items obtained from SDI and Honeywell in 2009 and 2010.

6) Neveling's Nedbank bank account number 1684155150, which was used to pay for items obtained from SDI and Honeywell. Funds were deposited into this account from an ABSA Bank Deltashelf or Deltashelf 03 bank account by Osama Hamade and/or Issam Hamade and/or Madelein O'callaghan (see #5 above).

7) Standard Bank of South Africa bank account number 200284347 in the name New Sam's Place: Hamade used this account to receive funds Neveling owed Hamade which Hamade had previously fronted to enable Neveling to obtain the above referenced and other items.

8) Standard Bank of South Africa account in the name of Deltashelf or Deltashelf 03 (account number unknown), possibly in the names of Usama Hamade and/or Issam Hamade and/or Madelein O'callaghan.

U.S. investigators also obtained information that Hamade has an extensive history of contacts with law enforcement in South Africa, and has been charged with crimes of violence. Hamade also holds himself out as a member of certain official military groups in South Africa. Other information gathered by investigators indicates that Hamade sometimes justifies his acquisition of U.S. technologies by saying that he is a member of the South African military which needs the technologies. In August 2012, the Republic of South Africa also issued a Red Notice for the arrest of Neveling arising from charges that Neveling had stolen an expensive pair of binoculars and that he possessed illegal firearms in South Africa.

## The Offenses

Title 50, United States Code (U.S.C.), Sections 1705(a) and 1705(c):

Whoever willfully violates, or willfully attempts to violate, any license, order or regulation issued under this chapter [including the United States Department of Commerce, Bureau of Industry and Security, Export Administration Regulations (EAR)] shall, upon conviction, be fined not more than $1,000,000, or, if a natural person, may be imprisoned for not more than 20 years, or both . . . .

Title 22, U.S.C. Section 2778(c):

Any person who willfully violates any provision of this section . . . or any . . . regulation issued under this section [including the United States Department of State Directorate of Defense Trade Controls, the International Traffic in Arms Regulations (ITAR)] . . . shall upon conviction be fined for each violation not more than $1,000,000 or imprisoned not more than 20 years, or both.

## Persons and Entities Involved

**Christiaan Arnoldus Neveling**
Alias: Chris Neveling
Place of Birth: South Africa
Date of Birth: 23 October 1963
Citizenship: South African
Passport Number (include country): South Africa A01261076; unknown South African temporary passport issued in approximately August 2010
South African Identification Number: 6310235096085
Address: United Kingdom

**Usama Darwich Hamade**
Aliases: Usama Hamadi; Usama Hamadeh; Osama Hamade; Sam Hamade; Prince Sam Hamade
Date of Birth: 13 December 1964
Place of Birth: Lebanon
Citizenship: South African; Lebanese
Passport Numbers (include country): South Africa 478958812; Lebanon 2196866
South African Identification Number: 6412135295088
Address: Johannesburg, South Africa

**Issam Darwich Hamade**
Date of Birth: 25 October 1962
Place of Birth: Lebanon
Citizenship: Lebanese
Passport Number: Lebanon RL0459459
Address: Lebanon

**Madelein Espach O'callaghan**
Date of Birth: unknown
Place of Birth: South Africa
Citizenship: South African
Passport Number: unknown
Address: 185 High Road, Bredell, Kempton Park, 1620, South Africa

**Gaynor Anne Neveling**
Date of Birth: 14 May 1968
Place of Birth: United Kingdom
Citizenship: United Kingdom; South African
Passport Numbers: United Kingdom 705481474; South Africa 75929251
Address: United Kingdom

**Hanah Mary Hamadi**
Aliases: Hanah Mary Hamade; Hanah Mary Pretorius
Date of Birth: 01 June 1977
Place of Birth: Unknown
Citizenship: South Africa
Passport Number: South Africa 477421904
South Africa Identification Number: 7706010043086
Address: Johannesburg, South Africa

**Execshelf 3029 CC**
Address: South Africa
Owner: Christiaan Neveling
Corporate Officers: Unknown

**Deltashelf 03 CC**
Address: South Africa
Owner: Unknown. Possibly Osama and/or Issam Hamade and/or Madelein Espach O'callaghan
Corporate Officer: Unknown

6

## Assistance Requested

I. **Official Records**

Please provide certified copies of the following official records, photographs, materials, and documents maintained by any government agency and/or ministry:

- A. Court records relating to Hamade and Neveling, including:
  1. convictions,
  2. release dates,
  3. charging documents, and
  4. arrest records.

- B. All visa and border crossing records (entry and exit records) from October 1, 2009, through August 31, 2011, pertaining to:

    1. Christiaan Neveling,
    2. Usama Hamade, including his aliases,
    3. Madelein O'callaghan,
    4. Gaynor Anne Neveling,
    5. Hanah Hamade, and
    6. Issam Hamade

- C. All identity documents, including:

    1. driver's licenses,
    2. South African identity cards,
    3. passports, temporary passports, and,
    4. visas

    pertaining to:

    a. Christiaan Neveling,
    b. Usama Hamade, including his aliases,
    c. Madelein O'callaghan,
    d. Gaynor Anne Neveling,
    e. Hanah Hamade, and
    f. Issam Hamade

- D. All records pertaining to international shipments of goods, both imported and exported, and payment records pertaining to taxes and fees paid on those shipments of goods, from October 1, 2009, through August 31, 2011, which are associated with:

      1.     Christiaan Neveling,
      2.     Usama Hamade, including his aliases,
      3.     Madelein O'callaghan,
      4.     Issam Hamade,
      5.     Execshelf 3029 CC, and
      6.     Deltashelf 03 CC.

E.    All records reflecting any military service in South Africa of Usama Hamade, including:

1. dates of service,
2. branches of service,
3. ranks obtained,
4. dates of ranks obtained,
5. discharge dates, and
5. type of discharges.

F.    Any and all records of incorporation identifying any and all persons who are affiliated with the South African companies Execshelf 3029 CC and Deltashelf 03 CC (regardless of when created), including the titles of the affiliated persons, and the dates the affiliated persons began and/or ceased their affiliations with those companies.

II.   **Business Records**

    A.    <u>Bank Records</u>

Please provide certified copies of records for the following financial accounts:

(1) Accounts of Standard Bank of South Africa, including:

    a)    MasterCard account number 5221-1820-3586-2570, associated to Deltashelf 03 CC;
    b)    bank account number 200284347 in the name of New Sam's Place, held by Usama Hamade; and
    c)    Account in the name of Deltashelf or Deltashelf 03 (account number unknown), possibly in the names of Usama Hamade and/or Issam Hamade and/or Madelein O'callaghan;

(2) Accounts of Nedbank Limited, including:

    a)    MasterCard account number 5412-8200-1564-4596, associated with a company called 8 Mile Investments, operated by Christiaan Arnoldus Neveling;

    b)    MasterCard account number 5412-8200-0885-0275, associated to Christiaan Arnoldus Neveling;

    c)    Visa account number 4923-0500-0006-6838, associated to Christiaan Arnoldus Neveling; and

    d)    Account number 1684155150 in name of C.A. Neveling, held by Christiaan Arnoldus Neveling;

(3) Accounts at ABSA Bank (account number unknown) in the name, or for the benefit, of Deltashelf or Deltashelf 03 CC, possibly held by Usama Hamade and/or his brother, Issam Hamade, and/or Madelein O'callaghan; and

(4) Any other bank records connected with the accounts described above that appear to supply or receive money used in the illegal export of controlled items to Lebanon.

Records should be produced for the period from October 1, 2009, through August 31, 2011, and should include but not be limited to:

(1) Original account signature cards;
(2) Documentation of account opening;
(3) Account ledger cards;
(4) Periodic account statements;
(5) Records (copied front and back) of all items deposited, withdrawn, or transferred for amounts exceeding 15,000 South African Rand (a little over US $2,000);
(6) Wire transfers;
(7) Correspondence to, from, or on behalf of the account holder; and
(8) Memoranda related to the account.

B.    Telephone Subscriber and Toll Records

Please cause the appropriate telephone service provider to produce certified copies of all telephone subscriber and toll records for following cell phone/telephone numbers relating to calls or activities that occurred from July 1, 2009, through August 31, 2011:

    a) 27823364098,
    b) 277212564216, and
    c) 27832801848.

## Procedures to Be Followed

### Official Records

To ensure that the official records will be admissible at trial in the United States, please cause the custodian of the records, or such other duly authorized agency representative who has knowledge concerning such records, to duly authenticate the copies of the records. Specifically, please ask the executing authority to do the following:

1. Cause the custodians of the records to produce true and correct copies of the official records;

2. Have the official providing the documents complete and attach an Attestation of Authenticity of Official Records (Form B appended to the Treaty and attached to this request);

3. Attach the completed Form B to the records provided and transmit those records, through the South African Central Authority, to the U.S. Central Authority, the Office of International Affairs, U.S. Department of Justice, 1301 New York Ave., N.W., Washington, D.C. 20005; and,

4. Invite the person(s) producing the records to appear to testify, if it should become necessary, in the United States District Court for the District of Minnesota, at a date and time to be determined and at the expense of the United States government.

### Business Records.

To ensure that the requested business records will be admissible at trial in the United States, please authenticate the copies of the documents produced by the custodian of the records, or such other duly authorized representatives of the business who have personal knowledge concerning such records, in accordance with the following instructions. Specifically, please ask the executing authority to do the following:

1. Have the persons producing the records complete and sign, under penalty for false statements, the attached Certificate of Authenticity of Business Records (Form A appended to the Treaty and attached to this request);

2. Sign and /or affix his or her seal (or stamp) to the completed certificate if satisfied that, under the procedure followed, a false statement on the certificate would subject the person who completed it to criminal penalty under the laws of South Africa, and attach the completed certificate to the records produced;

3. Transmit the records through the South African Central Authority to the Office of International Affairs, U.S. Department of Justice, 1301 New York Ave., N.W., Washington, D.C. 20005; and,

4. Invite the person producing the records to appear to testify at trial in the United States District Court for the District of Minnesota, if it should become necessary and at the expense of the U.S. government.

### Contact Information

For further information, please contact Patricia L. Petty, Senior Trial Attorney, Office of International Affairs, Criminal Division, United States Department of Justice, at 202-514-3655 or by email at Patricia.Petty@usdoj.gov.

### Conclusion

The United States Central Authority thanks the Central Authority of South Africa in advance for its attention to this particular request, relating to its investigation of Christiaan Neveling, Usama Hamade, and others, and for any assistance South African authorities are able to render in this matter.

5 October 2015
Date

Randy Toledo
Randy Toledo
Deputy Director